UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WHITAKER CONSTRUCTION CO., INC.,<br><br>　　Plaintiff,<br><br>　　v.<br><br>THE CINCINNATI INSURANCE COMPANY,<br><br>　　Defendant. | Case No. 1:22-cv-00336-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendant Cincinnati Insurance Company's second motion to dismiss (Dkt. 27). Having thoroughly considered the parties briefing and the relevant record, the Court finds oral argument unnecessary. For the reasons explained below, the Court will deny Cincinnati's motion to dismiss.

## BACKGROUND

This case involves an insurance dispute between Cincinnati and its insured, Plaintiff Whitaker Construction Company, following the repeated denial of a claim relating to loss allegedly resulting from an unexpected and sudden malfunction of certain equipment. In late January of 2021, Whitaker, a Utah-based construction company, entered into a contract with the City of Boise to complete work on the

HP Trunk Sewer Rehab Project (the "Project"). As alleged, the purpose of the Project was to install a cured-in-place liner (the "liner") to rehabilitate an existing sewer line within city limits. *See Am. Compl.* ¶ 7, Dkt. 25. A project manual was incorporated into the contract between Whitaker and the City, which required Whitaker to "secure, pay for, and maintain all-risk or special form builders risk insurance covering risks of physical loss or damage to the Facility." *Id.*, ¶¶ 3-4.

After signing the contract, Whitaker engaged its insurance brokerage, McGriff, Seibels & Williams, to procure a builder's risk insurance policy that met the project manual's specifications. *Id.*, ¶¶ 11-12. Eventually, Cincinnati issued a Builders Risk Inland Marine Policy (the "BR Policy"), which became effective on April 19, 2021.[1]

On October 21, 2021, while completing work on the Project, Whitaker alleges that the machinery used to cure the liner—called a light train—"suddenly and unexpectedly" malfunctioned, causing damage. *Id.*, ¶¶ 9, 15, and 51. Due to the damage, Whitaker alleges that it was required to remove and replace the liner,

---

[1] Because the BR Policy is attached and extensively referenced in the complaint, it is incorporated by reference. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Certain written instruments attached to pleadings may be considered part of the pleading"); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Thus, the Court may rely on the BR Policy without converting this motion to one for summary judgment.

**MEMORANDUM DECISION AND ORDER - 2**

resulting in substantial costs. *Id.*, ¶¶ 10-11.

Following the damage to the liner, Whitaker submitted a claim to Cincinnati under its BR Policy to cover the loss it incurred by removing and replacing the liner (the "loss"). On February 22, 2022, Cincinnati denied Whitaker's claim, explaining that the liner was not Covered Property under the BR Policy. Cincinnati then sent a second amended denial that provided additional grounds for denying Whitaker's claim, including that the loss fell within an exclusion to coverage. In total, Cincinnati denied coverage for the loss four separate times.

Eventually, Whitaker commenced this action in Idaho's Fourth District Court for Ada County on June 20, 2022. *See* Dkt. 1. Cincinnati then timely removed this suit to federal court under its diversity jurisdiction. *Id.* Following removal, Cincinnati filed a motion to dismiss, or alternatively, to transfer venue. During oral argument, this Court denied that motion. *See* Dkt. 21.

On March 21, 2023, Whitaker amended its complaint. *See Am. Compl.*, Dkt. 25. Whitaker's now operative complaint alleges two causes of action: (1) a claim for an illusory insurance policy, and (2) a cause of action seeking a declaratory judgment finding coverage under the BR Policy. *Id.*

Shortly after Whitaker filed its amended complaint, Cincinnati filed a second motion to dismiss. *See Def.'s Br.*, Dkt. 27. Cincinnati's current motion only seeks

**MEMORANDUM DECISION AND ORDER - 3**

to dismiss Whitaker's cause of action for declaratory relief under Federal Rule of Civil Procedure 12(b)(6). *Id.* Generally, Cincinnati claims that the damage to the liner is not covered because the liner does not qualify as "Covered Property"[2] and, even if it does, the loss is subject to unambiguous exclusions. *See id.* Whitaker opposes the motion, claiming that the loss is covered, and none of the cited exclusions are applicable in this case. *See Plf.'s Resp.*, Dkt. 34.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain

---

[2] In relevant part, the BR Policy states:

1.  **Covered Property**

    a.  **Buildings and Structures** – "We" cover direct physical loss caused by a Covered Cause of Loss to buildings and structures described on the "declarations" while in the course of construction, erection, or fabrication. This includes materials and supplies which will become a permanent part of the buildings or structures, all while located on the premises of the buildings or structures described on the "declarations", or within 1,000 feet of such premises. This also includes foundations, excavations, grading and filling.

    . . .

2.  **Property Not Covered**

    . . .

    d.  **Existing Buildings or Structures** – "We" do not cover existing buildings or structures to which additions, alterations, improvements, or repairs are being made.

*BR Policy* at 18, Dkt. 25-1.

**MEMORANDUM DECISION AND ORDER - 4**

statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

The Court identified two "working principles" that underlie *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the court need not accept as true, legal conclusions couched as factual allegations. *Id.* Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at

MEMORANDUM DECISION AND ORDER - 5

678–79. Second, to survive a motion to dismiss, a complaint must state a plausible claim for relief. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## DISCUSSION

As mentioned, Cincinnati only seeks dismissal of Whitaker's declaratory relief cause of action. *See Def.'s Br.* at 1, Dkt. 27. Generally, Cincinnati claims that even accepting Whitaker's allegations as true, the damage to the liner is not covered under the BR Policy's limitations and exclusions. *Id.* at 8. Although it is not entirely clear, Cincinnati's two primary arguments appear to be that the loss to the liner is not covered because (1) it is not "Covered Property," and (2) even if the liner qualifies as Covered Property, the loss falls under the defects, errors, and omissions exclusion. *See Def.'s Reply* at 5, Dkt. 35. The Court will address each argument in turn.

1. **Idaho Law Governing Contracts**[3]

In Idaho, a court interpreting an insurance policy "applies the general rules

---

[3] Although Cincinnati does not state what substantive law applies in this case, Whitaker clearly applies Idaho law. Because Cincinnati did not oppose Whitaker's contention, the Court will assume Idaho law applies in this case.

MEMORANDUM DECISION AND ORDER - 6

of contract law subject to certain special canons of construction." *Arreguin v. Farmers Ins. Co. of Idaho*, 180 P.3d 498, 500 (Idaho 2008) (quoting *Clark v. Prudential Prop. & Cas. Ins. Co.,* 66 P.3d 242, 244 (Idaho 2003). Courts first look to the plain meaning of the words to determine if there are any ambiguities, which is a question of law. *Cascade Auto Glass, Inc. v. Idaho Farm Bureau Ins. Co.*, 115 P.3d 751, 753 (Idaho 2005) (citing *Clark*, 66 P.3d at 244).

Generally, "where the policy language is clear and unambiguous, coverage must be determined, as a matter of law, according to the plain meaning of the words used." *Id.* at 753 (citing *Clark,* 66 P.3d at 245). However, where a policy provision is ambiguous—that is, it is reasonably subject to conflicting interpretations—it must be construed against the insurer. *Id.* (citing *Farmers Ins. Co. of Idaho v. Talbot,* 987 P.2d 1043, 1050 (Idaho 1999)). In determining whether ambiguities exist, a court must construe the policy as a whole, not by an isolated phrase." *Id.* at 754 (quoting *Selkirk Seed Co. v. State Ins. Fund,* 18 P.3d 956, 959 (Idaho 2000)).

Courts are to construe "insurance contracts in a light most favorable to the insured and in a manner which will provide full coverage for the indicated risks rather than to narrow its protection." *Id.* (quoting *Smith v. O/P Transp.,* 918 P.2d 281, 284 (Idaho 1996). Similarly, "a provision that seeks to exclude the insurer's

coverage must be strictly construed in favor of the insured." *Arreguin*, 180 P.3d at 500 (citing *Moss v. Mid–America Fire & Marine Ins. Co.,* 647 P.2d 754, 756 (Idaho 1982)). It is the insurer's burden "to use clear and precise language if it wishes to restrict the scope of its coverage."[4] *Id.*

### 2. Covered Property

Cincinnati first claims that the liner Whitaker was installing into the sewer is not "Covered Property" under the plain language of the BR Policy. *See Def.'s Br.* at 13, Dkt. 27. In its argument, Cincinnati does not contest whether the sewer is an existing structure described on the declarations page. Instead, in a single sentence, it claims that "[b]ecause the sewer pipe was an existing structure that was being altered it is not 'Covered Property'" *Id.* at 12. Cincinnati then appears to extrapolate its argument to the liner by implying that if the sewer is not Covered

---

[4] As a threshold matter, it appears that Cincinnati's motion requires the Court to determine coverage by applying the facts as alleged to the BR Policy's provisions. Although neither party has raised the issue, it is unclear whether this request is properly pursued under a 12(b)(6) motion. The Idaho Supreme Court has stated that "while it is true that questions of contract interpretation and meaning may only become questions of fact where there has been found to be ambiguity in the contract, *Clark v. St. Paul Property,* [1639 P.2d 454, 455 (Idaho 1981)] questions of application of policy provisions to the particular circumstances of each case are questions of fact, and must be decided on a case-by-case basis, whether or not the provisions themselves are found to be ambiguous." *Foster v. Johnstone*, 685 P.2d 802, 806 (Idaho 1984); *see also Perry v. Farm Bureau Mut. Ins. Co. of Idaho*, 936 P.2d 1342, 1344 (Idaho Ct. App. 1997) (same). Thus, regardless of whether the BR Policy is ambiguous, Cincinnati's motion seems to request factual determinations improperly resolved at this stage.

Property, the liner also does not qualify. *See id.* at 13 (without further explanation, Cincinnati later claims that "here, the liner being installed into the sewer piping is not 'covered property' under the plain language of the policy.")

Conversely, Whitaker claims that Covered Property is broadly defined to include "Buildings and Structures[,]" and that the BR Policy covers "direct physical loss caused by a Covered Cause of Loss to buildings and structures described on the 'declarations' while in the course of construction, erection, or fabrication. This includes materials and supplies which become a permanent part of the buildings or structure. . . ." *See Plf.'s Resp.* at 13, Dkt. 34 (quoting *BR Policy* at 18, Dkt. 25-1). Whitaker then argues that the liner is, in fact, Covered Property under the plain language of the BR Policy because while the "Not Covered Property" exclusion may include the existing buildings and structures, it does not extend to the materials, like the liner, that will become a permanent part of those buildings or structures. *Id.*

Here, Cincinnati's "Covered Property" argument relies on a factual dispute not properly resolved on a motion to dismiss.[5] In their complaint, Whitaker alleges

---

[5] *See, e.g., Alvantor Industry v. Shenzhen*, No. 221CV01820CASKSX, 2021 WL 3913171, at *6 (C.D. Cal. Aug. 30, 2021) ("Defendant's first argument . . . , raises a question of
(Continued)

that "[t]he liner was to become a permanent part of the buildings or structure and was therefore 'Covered Equipment'" *Am. Compl. ¶ 36*, Dkt. 25. Cincinnati does not contest this statement. More importantly, Cincinnati does not argue nor show that even if the liner was to become a permanent part of the structure, it would still not be considered Covered Property. Therefore, accepting Whitaker's factual allegations as true, Whitaker's complaint plausibly alleges that the liner qualifies as Covered Property. *See Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012) (a court should only grant a motion to dismiss when, "accepting all factual allegations in the complaint as true and construing them in the light most favorable to the nonmoving party," a complaint fails to state a plausible claim for relief).[6]

### 3. Defects, Errors, and Omissions Exclusion

Cincinnati next argues that even if the sewer pipe and liner qualify as

---

fact, and thus is not an appropriate issue to be decided on a motion to dismiss."); *Pierce v. NovaStar Mortg., Inc.*, 422 F. Supp. 2d 1230, 1237 (W.D. Wash. 2006) ("Simply stated, the extent of [plaintiff's] knowledge and expertise is a question of fact, and does not belong in a Fed.R.Civ.P. 12(b)(6) motion to dismiss. While Defendant may attempt to offer this defense in a motion for summary judgment or at trial, along with adequate proof of the matter, the Court declines to analyze it here.").

[6] As discussed in greater depth below, additional unresolved issues regarding the relationship between coverage under the BR Policy and Whitaker's illusory insurance cause of action render dismissal problematic.

Covered Property under the BR Policy, the claimed loss falls under the defects, errors, and omissions exclusion based on the allegations in the complaint.[7] *See Def.'s Br.* at 13, Dkt. 27. Specifically, Cincinnati argues that because the "policy unambiguously excludes coverage for defects or errors related to construction" and the complaint makes "clear that the alleged loss resulted from (and only from) an error during construction, when the light train failed[,]" there is no coverage for Whitaker's claim. *See Def.'s Reply* at 5, Dkt. 35.

Conversely, Whitaker contends that the "faulty workmanship exclusion" is ambiguous and should therefore be construed against Cincinnati. *See Plf.'s Resp.* at 8–11, Dkt. 34. Alternatively, Whitaker argues that even if the exclusion is unambiguous, the exclusion is inapplicable because the loss was not caused by any

---

[7] In relevant part, BR Policy states:

3.  "We" do not pay for loss or damage of one or more of the following exclusions apply to the loss. But if the loss by a Covered Cause of Loss results "we" do pay for the resulting loss.

    A.  Defects, Errors, and Omissions – "We" do not pay for loss caused by an act, defect, error, or omission (negligent or not) relating to:

        (1) Design, specifications, construction, or workmanship;
        (2) Planning, zoning, development, siting, surveying, grading, or compaction; or
        (3) Maintenance, installation, renovation, remodeling, or repair.

*BR Policy* at 24, Dkt. 25-1.

**MEMORANDUM DECISION AND ORDER - 11**

act, defect, error, or omission in Whitaker's construction or workmanship. *See id.* at 12–13.

While the parties raise arguments that will likely need to be addressed in the future, the Court finds that resolving these questions under the pending motion to dismiss is ill-advised and requires determination on issues not properly before the Court. To explain, Cincinnati is asking the Court to determine coverage under the BR Policy in isolation from Whitaker's claim for illusory coverage. However, as discussed below, even though Whitaker raises two separate claims for relief, at this point, one cannot be decided in isolation from the other.

Under Idaho law, coverage is illusory when "[t]he declarations page of the policy contains language and words of coverage, then by definition and exclusion takes away the coverage." *Pena v. Viking Ins. Co. of Wisconsin*, 503 P.3d 201, 207 (Idaho 2022) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Dixon*, 112 P.3d 825, 907 (Idaho 2005)). "When a policy only provides an illusion of coverage for its premiums, the policy limitations and exclusions will be considered void as violating public policy." *Point of Rocks Ranch, L.L.C. v. Sun Valley Title Ins. Co.*, 146 P.3d 677, 680 (Idaho 2006) (citations omitted); *see also Pena*, 503 P.3d at 211 (The Idaho Supreme Court recently clarified that where an insurance policy is illusory, "[j]ustice and fairness require" a court to "enforce the contract between

**MEMORANDUM DECISION AND ORDER - 12**

[the insurer and insured] while prohibiting [the insurer] from relying on its definitions, exclusions or offset provisions."). In other words, when an insurance policy is illusory, the insurer "is estopped from denying coverage based on the illusion of coverage it created." *Pena*, 503 P.3d at 211.

Whitaker's first cause of action claims that "Whitaker secured the BR Policy from [Cincinnati] for the sole purpose of covering its work on the Sewer Rehab Project" after providing Cincinnati with the project manual requiring appropriate insurance. *See Am. Compl.* ¶¶ 42-43, Dkt. 25. Whitaker's complaint further alleges that the "declarations of the BR Policy state that [Cincinnati] is providing coverage, but the exclusions take away any meaningful coverage to Whitaker for the Sewer Rehab Work." *Id.* at ¶ 46. Thus, before the Court can determine that there is no coverage as a matter of law—or dismissal of Whitaker's declaratory relief claim—it would not only need to determine that the loss is excluded as a matter of law, but that the exclusions and limitations do not render coverage illusory.[8] However, Cincinnati elected to avoid discussing Whitaker's first cause of

---

[8] To clarify, the Court is not announcing a new legal standard requiring an insurer to show every exclusion does not render coverage illusory in all circumstances, nor is it negating Whitaker's ultimate burden to prove its case at trial. Instead, under the facts alleged, claims at issue, and the 12(b)(6) standard, the Court finds Whitaker's causes of action too intertwined to be addressed independently of each other without adequate briefing.

**MEMORANDUM DECISION AND ORDER - 13**

action and how it might affect coverage.[9] Instead, Cincinnati relies exclusively on its claim that under the allegations in Whitaker's complaint, the BR Policy unambiguously excludes the claimed loss because it was caused by an error related to construction. *See Def.'s Reply* at 5, Dkt. 35.

Even if the Court agrees with Cincinnati's interpretation that the defects, errors, and omissions exclusion unambiguously precludes coverage for essentially any loss that occurs during construction, coverage still cannot be determined as a matter of law in this case until the question of whether such an interpretation—if required by law—would render coverage illusory. As noted, under Idaho law, insurance policy "exclusions will be considered void as violating public policy" where "the [policy] only provides an illusion of coverage for its premiums." *Point of Rocks Ranch*, 146 P.3d at 680 (citations omitted). Because Whitaker alleges that the sole purpose for acquiring the BR Policy was to cover its work on the Project, the Court finds that Whitaker has plausibly alleged a claim for illusory coverage under Cincinnati's interpretation of the limitations and exclusions. *See Am. Compl.*

---

[9] To be clear, Whitaker also does not discuss the relationship between its two claims and Cincinnati's interpretation. Nonetheless, the parties' lack of a global discussion plays a role in the Court's determination to defer ruling on the discrete issues under this motion.

¶¶ 41-48, Dkt. 25.[10] Simply put, pivotal issues must be determined before the Court can decide whether Whitaker's loss is excluded as a matter of law under the defects, errors, and omissions exclusion.[11] Because there are remaining issues regarding the exclusion, the complaint plausibly states that Whitaker's loss is not

---

[10] To be clear, the Court is not finding that the defects, errors, and omissions exclusion renders the BR Policy illusory. However, the Court does believe Whitaker's complaint plausibly alleges a claim for illusory coverage, for which Cincinnati provides no related discussion. Therefore, determining coverage in isolation from the illusory policy claim could lead to a procedurally confusing and potentially conflicting ruling. For instance, if this Court were to hypothetically declare that there was no coverage as a matter of law under an exclusion that is later rendered void, it would make the Court's coverage determination obsolete and contrary to Idaho law. *See Pena*, 503 P.3d at 211 (when an insurance policy is illusory, the insurer "is estopped from denying coverage based on the illusion of coverage it created."). Therefore, making a coverage determination based on the cited exclusion is premature.

[11] In addition to the unresolved issue regarding illusory coverage, the Court finds Cincinnati's claim that the "allegations in the complaint make that the alleged loss resulted from (and only from) an error during construction, when the light train failed" is not an accurate statement under the 12(b)(6) standard. *See Def.'s Reply* at 5, Dkt. 35. Rather, Whitaker's complaint alleges that the damage to the liner was caused when the "[e]quipment suddenly and unexpectedly malfunctioned." *See Am. Compl.* ¶ 50, Dkt. 35. There are no allegations that Whitaker's error caused the malfunction or that Whitaker made any errors in construction. *See, e.g., Fisher v. Garrison Prop. & Cas. Ins. Co.*, 395 P.3d 368, 372 (Idaho 2017) (explaining that a similar exclusion was inapplicable because the loss "was not caused by any construction done *by [the "worker"]* that was faulty, inadequate, or defective.") (emphasis added).

While Whitaker may face a hurdle in substantiating its lack of involvement in the malfunction, accepting all the factual allegations in the complaint as true and construing them in the light most favorable to Whitaker, the Court is not persuaded that the complaint fails to plausibly allege that it was not Whitaker's error in construction that caused the loss or that the unexpected malfunction of the light train is categorically an "error in construction." Thus, factual questions exist as to whether the exclusion is applicable in this case, which should not be resolved on a motion to dismiss. *See Foster,* 685 P.2d at 806 (under Idaho law, "questions of application of policy provisions to the particular circumstances of each case are questions of fact and must be decided on a case-by-case basis, whether or not the provisions themselves are found to be ambiguous.")

**MEMORANDUM DECISION AND ORDER - 15**

excluded under the BR Policy.

Even apart from the interplay of Whitaker's two causes of action, the Court is not persuaded that the defects, errors, and omissions exclusion unambiguously precludes coverage. The exclusion provides for no coverage if Whitaker's claim arises from an: act, defect, error, or omission (negligent or not) relating to:

(1) Design, specifications, construction, or workmanship;
(2) Planning, zoning, development, siting, surveying, grading, or compaction; or
(3) Maintenance, installation, renovation, remodeling, or repair.

*BR Policy* at 24, Dkt. 25-1. However, the exclusion does not identify *whose* "act, defect, error, or omission" will preclude coverage. Nor does it make clear that the exclusion applies to faulty equipment used by Whitaker in performing its work on the construction project. A reasonable interpretation of the exclusion is that it applies only to acts, defects, errors, or omissions of Whitaker and others working on the construction project. This view of the exclusion would make it inapplicable to the allegations of the complaint, which simply states that the damage to the liner was caused when the "[e]quipment suddenly and unexpectedly malfunctioned." *See Am. Compl.* ¶ 50, Dkt. 25. As noted above, it is well-established that an exclusion of coverage must be strictly construed in favor of the insured, because it is the insurer's obligation "to use clear and precise language if it wishes to restrict the scope of its coverage." *Arreguin*, 180 P.3d at 500. Under that canon of

**MEMORANDUM DECISION AND ORDER - 16**

construction, the motion to dismiss is not well-taken.

In sum, Whitaker's complaint plausibly alleges that the liner is Covered Property under the BR Policy because the liner was alleged to become a permanent part of an existing structure described on the "declarations." Additionally, issues remain unresolved before the Court can determine whether the BR Policy excludes Whitaker's loss as a matter of law. Because these issues exist, Whitaker has plausibly alleged that the errors, defects, and omissions exclusion does not apply to Whitaker's claimed loss. Accordingly, the Court will deny Cincinnati's motion.

## ORDER

**IT IS ORDERED that:**

1. Defendant's Motion to Dismiss the First Amended Complaint (Dkt. 27) is **DENIED**.

DATED: September 1, 2023



B. Lynn Winmill
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 17**